UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO


| | |
|---|---|
| BRIAN KEITH ALFORD, ) | CASE NO. 4:08 CV1963 |
| ) | |
| Petitioner, ) | JUDGE PATRICIA A. GAUGHAN |
| ) | |
| v. ) | |
| ) | MEMORANDUM OF OPINION |
| ) | AND ORDER |
| J. T. SHARTLE, ) | |
| ) | |
| Respondent. ) | |

On August 13, 2008, *pro se* petitioner Brian Keith Alford filed the above-captioned petition pursuant to 28 U.S.C. § 2241. Mr. Alford, who is incarcerated at the Federal Correctional Institution in Elkton, Ohio, filed this action against F.C.I. Elkton Warden J. T. Shartle. He challenges a detainer warrant filed against him by the Ohio Department of Rehabilitation and Correction (ODRC). Mr. Alford asserts that the detainer is violating his constitutional right to a speedy resolution and prevents him from participating in rehabilitation programs at the prison. He seeks an order from this court dismissing the detainer warrant lodged against him.

*Background*

Mr. Alford was convicted in the Montgomery County [Ohio] Court of Common Pleas on three counts of robbery and aggravated robbery (firearm specification). On March 27, 1984, the court sentenced him to consecutive 3 - 15 year sentences on each robbery count and 5 - 25 years on

the aggravated robbery charge, followed by three years actual incarceration for the firearm specification. *Ohio v. Alford*, No. 83 CR 2225 (Mont. Cty. Ct. Comm. Pls. 1983).

On December 23, 1999, Mr. Alford was released on parole. Approximately six months later, he was arrested on federal charges of bank robbery. He was convicted and sentenced by the court to serve 144 months. Thereafter, the ODRC Division of Parole Services issued a warrant, January 28, 2003, advising that petitioner violated the terms of his parole after being released on December 23, 1999. In a letter to F.C.I. Manchester in Kentucky, dated March 21, 2003, the ODRC attached the warrant and requested that a detainer be placed in Mr. Alford's file until he was released. At that time he would be extradited to Ohio.

Mr. Alford wrote a letter dated March 13, 2005 to Harry Hageman, Deputy Director of OAPA, requesting removal of the detainer. In response, Parole Program Specialist Arlette Brown advised petitioner that, because he was convicted on his Ohio offense before his federal offense, the Interstate Agreement on Detainers Act (IADA) would not apply to his case. As such, she explained that the detainer would remain in effect until Mr. Alford "became available to the State of Ohio." (Letter from Brown to Alford of 4/5/05, at 1.)

On July 19, 2005, a Motion for Request of Disposition and Dispensation of Detainer/All Pending Charges was filed by Mr. Alford in the Montgomery County Court of Common Pleas. Three days later, the court issued a Decision Order and Entry Overruling Defendant's Motion. The order set forth, in part, that "it is simply unclear to the court what Mr. Alford is complaining about, or what remedies he is seeking." *Ohio v. Alford*, No. 83 CR 2225, Order Overruling Detainer Mot. (July 22, 2005).

Immediately thereafter, petitioner sent another letter to Harry Hageman, dated July

28, 2005. Again, Ms. Brown responded on behalf of Mr. Hageman and advised Mr. Alford that a Notice of Hearing would be sent to him regarding his possible violation within days of his return to Ohio. The Notice would include the date and time of his hearing and a list of the alleged violations during his term of supervised release. At the end of the hearing he would then be provided a notice of the findings and a sanction order would be issued. Ms. Brown explained further that supervised release violation hearings were not conducted *in absentia* and, therefore, petitioner would need to be available to the state of Ohio before the hearing process could be initiated.

Petitioner, who claims his projected release date is in January 2011, attended an orientation on or about July 8, 2008 for the Life Connections Program (LCP) offered by the Bureau of Prisons (BOP). He describes LCP as a faith-based program that allows prisoners to prepare for reentry to society. One stipulation for participation in LCP is that the prisoner not have a detainer lodged against him.

He now argues that during the time he was awaiting trial and sentencing in Montgomery County Jail, the Ohio Adult Parole Authority never served him with a "notice of violation within 10 days, and a prompt hearing within 15 following notice." (Pet. at 2.) He asserts that this violates the "terms of agreement regarding parole violation hearing and notice . . .". (Pet. at 2.) Moreover, he claims he is "innocent" and has an appeal pending before the Sixth Circuit to address that assertion. Mr. Alford seeks an order from this court dismissing the detainer warrant to allow him to enroll in LCP and serve 13 months on parole upon his release.

*Removal of Detainers*

A detainer is a "request filed by a criminal justice agency with the institution in which a prisoner is incarcerated, asking the institution either to hold the prisoner for the agency or

-3-

to notify the agency when the release of the prisoner is imminent." *Carchman v. Nash*, 473 U.S. 716, 719 (1985). A detainer does not represent the basis upon which the prisoner is actually held in confinement. *See e.g., Curtis v. United States*, No. 03-6411, 2005 WL 89057, at *4 (6th Cir., Jan. 18, 2005)([Parole]Commission authorized to issue warrant and treat as a detainer, not to be executed until the prisoner has completed another sentence of imprisonment). Instead, it assumes that a prisoner is incarcerated on other charges. The detainer seeks to make sure that the prisoner is not released before the authority issuing the detainer can obtain future custody on the charges referenced in the detainer.

Mr. Alford has made several pronouncements suggesting that he is entitled to a speedy resolution of the potential parole violation charges that underlie the basis for issuing the detainer. These claims make a passing reference to the IAD. The Supreme Court has held, however, that Article III of the IAD, which gives a prisoner in one State the right to demand speedy disposition of "any untried indictment, information or complaint" that is the basis of a detainer lodged against him by another State, does not apply to detainers based on parole or probation violation charges. *Carchman v. Nash*, 473 U.S. 716 (1985). In so holding, the Court reasoned, in part, that "it often may be desirable to delay rather than to expedite disposition" of such charges, because in "cases such as this, in which the parolee admits or has been convicted of an offense plainly constituting a parole violation, the only remaining inquiry is whether continued release is justified notwithstanding the violation." *Id*. at 733 (quoting *Moody v. Daggett*, 429 U.S. 78, 89 (1976)). Thus, Mr. Alford is not entitled to a speedy resolution of the detainer warrant through the IAD.

*Parole Hearing*

Mr. Alford's secondary argument attacks the Ohio Adult Parole Authority's alleged failure to timely conduct a parole revocation hearing. He claims this is a fatal flaw which subjects the detainer to summary dismissal.

Because parole revocation only deprives the parolee "of the conditional liberty properly dependent on observance of special parole restrictions," the full scope of due process rights accorded a defendant in a criminal prosecution do not apply. *Morrissey v. Brewer*, 408 U.S. 471, 480 (1972); *Wilkins v. Timmerman-Cooper*, 512 F.3d 768, 774 (6th Cir. 2008). Although a preliminary hearing to determine if there is probable cause or reasonable grounds to believe the arrested parolee committed a parole violation is typically required, *see id.* at 485-87, the Supreme Court has held that no preliminary hearing is required in cases such as the present one, where the parolee has been convicted of and incarcerated for a subsequent offense committed while on parole. *Moody v. Daggett*, 429 U.S. 78, 86 n. 7 (1976). The *Morrissey* Court held that the minimum requirements of due process for a final revocation hearing include: (a) written notice to the parolee of the claimed violations of parole; (b) disclosure to the parolee of evidence against him; (c) the opportunity for the parolee to be heard in person and to present witnesses and documentary evidence; (d) the parolee's right to confront and cross-examine adverse witnesses, unless good cause is found by the hearing officer for not allowing confrontation; (e) a "neutral and detached" hearing body; and (f) a written statement by the factfinders of the evidence relied on and reasons for revoking parole. *Morrissey*, 408 U.S. at 489.

While the Court noted that this revocation hearing must be held within a "reasonable time after the parolee is taken into custody," Mr. Alford is not presently in the custody of the State of Ohio. It is only at that time when he will be entitled to be heard and to present evidence showing

he did not violate his parole conditions or, if he did, what circumstances in mitigation suggest the violation does not warrant revocation. *Id*. at 488. Due process is satisfied if the procedures followed by the parole board comply with the minimum standards set forth in *Morrissey*. *Id*. at 490.

Finally, the lodging of a detainer does not *per se* violate a prisoner's due process rights. *Moody*, 429 U.S. at 86. The mere fact that it may have an adverse impact on a prisoner's classification or his eligibility for institutional programs is not sufficient to invoke due process. *Id*. at 88 n. 9. Therefore, Mr. Alford's claim that he is entitled to participate in the LCP based on the adverse effects of the detainer lacks merit.

Based on the foregoing, the petition for writ of habeas corpus is dismissed. The court certifies, pursuant to 28 U.S.C. § 1915(a)(3), that an appeal from this decision could not be taken in good faith.

IT IS SO ORDERED.

/s/ Patricia A. Gaughan
PATRICIA A. GAUGHAN
UNITED STATES DISTRICT JUDGE

Dated: 11/4/08